the property was Miller's; and this it had a right to decide, as is said by the supreme court in the case of Ex parte Christy, 3 How. [44 U. S.] 292. In Freeman v. Howe, 24 How. [65 U. S.] 450, it was decided that when the property is in the possession of the marshal it could not be interfered with by a process from the state court; and here the property was in effect in the possession of the court or its officers, and the maintenance of the action in the state court depends on the construction to be given to the bankrupt law.

It often happens that the federal and state courts decide differently between citizens of a state as to the rights of property, but here the federal court is, under the bankrupt law, the ultimate arbiter as to the construction of the bankrupt law, and by this the state courts are bound. This property must, therefore, come into the federal court to have rights determined. It is asked how Baldwin can have an appeal or writ of error. He has dismissed the suit against the assignee, but the assignee has the property or the proceeds, and Baldwin has a complete remedy for the value of the property taken against him; and an appeal or writ of error will lie, for the value of the property taken, in a suit against the assignee just as in any other case.

The order of the district court is only temporary, and under the peculiar circumstances of the case I shall not at present interfere with it. If there are any facts which in the opinion of counsel may justify it, Baldwin can make application to the bankruptcy court to proceed with his suit in the state court.

See further that an injunction will not be granted to stay proceedings in a suit instituted in a state court against the marshal for taking possession of property which did not belong to the debtor, under a warrant in involuntary proceedings. In re Marks [Case No. 9,095].

## Case No. 9,552.

### In re MILLER.

[3 Cin. Law Bul. 967.]

Circuit Court, D. Indiana. Nov. Term, 1878.

GRAND JURY—DISTRICT ATTORNEY—INSTRUCTIONS NOT TO PROSECUTE—OATH OF JURY.

The grand jury, having the case of Casey W. Miller, charged with embezzlement in the First National Bank of Indianapolis, under investigation, came into open court and reported to Judge Gresham that the district attorney had received instructions from the president of the United States against prosecuting a certain party for alleged embezzlement in the First National Bank of Indianapolis, that they had been requested to investigate the matter, and desire to know from the court whether it was their duty to proceed with the case, instructions of the president to the district attorney to the contrary notwithstanding.

GRESHAM, District Judge (charging jury). When you were impanelled at the begin-ning of the term you swore that you would diligently inquire and true presentment make of such matters as should be given you in charge, or might otherwise come to your knowledge, touching violations of the criminal statutes of the United States; that you would present no one through envy, hatred or malice, and that you would have no one unpresented through fear, favor, affection, reward, or the hope thereof. You could not, if you would, escape the obligation of this oath by heeding the instruction of the president in this particular case. The president may, if he feels so inclined, interfere, even in advance of indictment, by exercising the pardoning power. In no other way has he the slightest authority to control your action. He has it in his power to pardon the alleged offender, and unless he is willing to take this responsibility he has no more right to control your action than the czar of Russia. If you believe the president's instructions to the district attorney were intended to prevent you from making the fullest investigation into the matter now before you, and from returning an indictment against the accused if the evidence should warrant it, you should be inspired with additional determination to do your duty. The moment the executive is allowed to control the action of the courts in the administration of criminal justice their independence is gone. It is due the president to say that the court does not believe he has any desire to encroach on the judiciary, or that he contemplated any unwarranted interference by his instructions to the district attorney. The district attorney says in open court that he is ready and willing to aid you in any examination of this case which you may feel called upon to make. He and his assistants are faithful officers, and will render you all necessary aid in this as in other cases.

## Case No. 9,553.

### In re MILLER.

[1 N. B. R. 410 (Quarto, 105); 1 Am. Law T. Rep. Bankr. 121.] [1]

District Court, W. D. Pennsylvania. Jan. 28, 1868.

BANKRUPTCY — ORDER TO DISMISS PROCEEDINGS—PETITION OF ALL PARTIES.

When the petitioning creditor, the bankrupt, and all the creditors who have proved their debts, desire the court to dismiss the proceedings before the choice of an assignee, an order will be made by the court directing that the proceedings be dismissed, and allowing the messenger to deliver up to the bankrupt the property seized, upon the payment of costs.

[Cited in Judson v. Courier Co., 8 Fed. 425.]

This being the day to which the first meeting of creditors was adjourned, at the request of said creditors, and also the day

---

[1] [Reprinted from 1 N. B. R. 410 (Quarto 105), by permission. 1 Am. Law T. Rep. Bankr. 121, contains only a partial report.]

fixed for hearing the creditors, upon their petition praying for the discontinuance of the proceedings in this matter, which said petition was referred to me by special order of said district court, "with power to investigate the facts and to report upon the law and expediency of such discontinuance. And further, that said register call a meeting of the creditors," &c. And further, that said register report as soon as may be thereafter the action of said meeting to this court, and as to the power of the court to order such discontinuance. I sat, at the time and place above mentioned, for the purpose of performing the duties so assigned to me.

All the creditors of said bankrupt [William D. Miller] named in the schedule were notified of the time and place of this meeting, under the order of the court, by publication in the Erie Daily Republican, copies of which, containing the notice, were sent to each of the creditors, as well. as to those who had proved their debts. Nineteen out of fifty-four of the creditors have proved their debts, amounting in all to the sum of $9,030.95. All of these were present at this meeting, or duly represented by their attorneys, except the "Akron Stove Company," whose claim, as proved, is only twenty-five dollars. All the remaining twelve who have proved their debts, amounting to $9,005.95, vote in favor of dismissing the proceedings in bankruptcy, in compliance with the prayer of the petition. The claims of the creditors who have not proved their debts amount to about twenty thousand dollars. In view of the facts that the petitioning creditor, D. J. Crowell, the bankrupt, and all the creditors who have proved their debts (with the single exception above mentioned), desire the court to dismiss the proceedings, the register is of the opinion that it is expedient and proper that it should be done, provided it is lawful to do so. On this point the following is respectfully submitted to the honorable judge of the district court:

By SAMUEL E. WOODRUFF, Register:

William D. Miller was duly adjudged a bankrupt on the 18th day of October, 1867, on petition of D. J. Crowell, one of his creditors. Twenty-four of his creditors petition the court to dismiss and supersede the whole proceedings. No assignee has yet been chosen. The bankrupt and the petitioning creditor, and all the other creditors who have proved their debts (save one who did not appear nor make any opposition, and whose debt only amounts to twenty-five dollars), join in asking the court to grant the prayer of the petition. Has the judge of the district court the power to do so?

Two learned attorneys appeared before the register, in support of the affirmative of this proposition, but they furnished no authority or law bearing on the point, and base their arguments upon the general power of common law courts to dismiss proceedings upon the application of the parties. The proceedings in bankruptcy are sui generis, and in absence of any express enactment, it is proper to look to the general scope and spirit of the act of congress creating the jurisdiction. I am not aware that the question under consideration has been determined or even discussed in proceedings under the act of March 2, 1867 [14 Stat. 517].

In coming to the conclusion I have arrived at, I give much weight to the action of the creditors who have proved their debts, at the meeting above referred to. At that meeting they decided that, in their opinion, it was best for all concerned that the proceedings should be discontinued—nemo contradicente. The act gives large powers in the premises to these meetings of creditors. When presided over by the register it calls them "courts of bankruptcy." Sections 11, 12. It authorizes a majority in number and value of such creditors to elect assignees (section 13), to remove an assignee by a similar vote (section 18), to determine the amount of dividends (section 27). Three fourths in value of them may supersede the proceedings by arrangement, and commit the whole estate of the bankrupt to trustees, who shall settle the estate under their direction (section 43), in which event the whole matter is taken out of the hands of the court, except as its aid is invoked by the creditors. The creditors who do not prove their debts are not allowed to have a voice in any of the proceedings, or to participate in the funds. The policy of the act is to have the estate disposed of in such manner as the proving creditors shall determine is for their interest. In the present case they have determined that their interests will be best promoted by allowing the bankrupt to resume the possession of his estate, and to continue business. The register is of the opinion that the court has power to grant their request. There are some decisions under the bankrupt laws that have a bearing upon this point. In Cullen's Bankrupt Laws (440) it is said: "The only case in which any express provision by statute has been made for superseding a commission is that of a petitioning creditor compounding his debts with the bankrupt; but the lord chancellor has always exercised a discretion of this kind whenever the ends of justice required, either for the sake of the creditors or of the bankrupt himself, that a commission should not be suffered to proceed." Hill. Bankr. (2d Ed.) 406: "A district judge derives the power to supersede a commission of bankruptcy from the bankrupt law, by construction and implication." Morris's Estate [Case No. 9,825], cited Hill. Bankr. 407. "A supersedeas lawfully ordered places the bankrupt and his estate in the same situation they would have been in if the commission had never existed." Id. 407.

For the foregoing reasons the register is

of the opinion that it is both expedient, and legal, that a decree be entered by the court, directing the whole proceedings in this matter to be dismissed, vacated, and annulled; and that the marshal, as messenger, be directed to render up to the said William D. Miller, all property in his possession by virtue of the warrant of seizure, upon the payment by the said William D. Miller, of all costs of the proceedings.

McCANDLESS, District Judge. The decision of the register is affirmed.

= = =

## Case No. 9,554.

### In re MILLER.

[The case reported under above title in 17 N. B. R. 402, and 26 Pittsb. Leg. J. 8, is the same as Case No. 9,401.]

= = =

## Case No. 9,555.

### In re MILLER.

### Ex parte MONSON SAVINGS BANK.

[19 N. B. R. 78; 19 Alb. Law J. 40; 26 Pittsb. Leg. J. 175.] [1]

District Court, D. Massachusetts. Jan. 3, 1879.

BANKRUPTCY — SECURED DEBT — MORTGAGE — SALE THEREUNDER — PROVING BALANCE DUE.

The creditor bank held a mortgage for eight thousand dollars given by the bankrupt and one S. M. upon land owned by them in equal shares. After the bankrupt had been adjudicated and an assignee appointed, the bank, without notice to the assignee or leave of court, sold the mortgaged premises at auction for one thousand dollars and claimed to prove for the balance of the debt. It was afterwards agreed by the parties that the value of the land was six thousand dollars, and that the sale had been made "without any thought of the effect it might have upon the balance of their claim in bankruptcy." *Held*, that no sufficient equitable excuse was given for the failure to comply with the law in disposing of the security, and that the creditor could not prove for any sum whatever.

The Monson Savings Bank held a mortgage, given by Francis Miller, the bankrupt, and S. H. Miller, of land, in Springfield, owned by them in equal shares, to secure their joint note for eight thousand dollars and interest. After F. Miller had been adjudged bankrupt, and after the appointment of his assignee, the bank sold the land by auction, in pursuance of a power in the deed, without notice to the assignee, or actual knowledge on his part, or leave of court, and it was bought by one Holmes, who was the highest bidder, for one thousand dollars. Giving credit for this amount against the debt and interest, and certain taxes and other charges, there remained an excess of debt amounting to seven thousand seven hundred and eighty-one dollars and twenty-six cents, for which the bank offered proof. After the court had in-

[1] [Reprinted from 19 N. B. R. 78, by permission. 26 Pittsb. Leg. J. 175, contains only a partial report.]

timated that proof could not be allowed on that state of facts, the parties further agreed that the value of the land was six thousand dollars, and that the sale was made by the bank "without any thought of the effect it might have upon the balance of their claim in bankruptcy." The question was then argued, whether the bank could prove for any sum, and what.

M. P. Knowlton, for Savings Bank.
G. Wells, for assignee.

LOWELL, District Judge. The practice of courts of bankruptcy, adopted in its substantial features by our statute (section 5075), requires a secured creditor, if he intends to prove for any excess of his debt above the value of the security, to have that value ascertained either by agreement with the assignees or under the direction of the court. In England the creditor may, in order to prove at the first meeting, put his own value on the security, but at the risk of accounting for all that he obtains above that value, with no corresponding right to have credit for any deficiency; which leads, I suppose, to a settlement with the assignees, in the first instance, in all doubtful cases.

The reason of the rule is well shown by this case. It is, that the assignee may take care that the property brings its full value. Here the sale produced exactly one-sixth of the admitted value; and it will not readily be believed that this result was not purposely brought about for the benefit of the mortgagees, and that they have not retained the actual control of the property, hoping for a large dividend besides.

The decisions follow the statute, and reject proof of any part of a debt when the creditor has failed to take the steps required by law. In re Herrick [Case No. 6,421]; McHenry v. La Société Française [95 U. S. 58]. Our statute is so explicit that decisions are not needed. In bankruptcy there is, in my opinion, some equitable latitude; and if a case should arise in which some forms had been neglected, through mistake of fact, and possibly under some circumstances under one of law, and complete justice could be done, I think the court might permit proof for the proper sum. Lee v. Franklin Savings Bank [Case No. 8,188]. But I do not look upon this as such a case. The parties have agreed that the bank had "no thought" of the effect of their action upon the proof; but this is not enough. They may have known that their action was irregular, though they did not consider the consequences. If they had been ignorant of the bankruptcy, or of the appointment of an assignee, they might well ask to have their mistake corrected. The agreement finds no such state of facts. They acted in a way that was not only irregular, but unfair between man and man, in not giving the assignee notice of the sale.

That the bank was a secured creditor in